UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **RENE CAMACHO,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **NO. EP-15-CV-00318-PRM-RFC** |
| **CITY OF EL PASO, TEXAS;** | § | |
| **GREG ALLEN;** | § | |
| **JENNIFER CALLAN,** | § | |
| **GABRIEL PERALTA; and** | § | |
| **TYSON LEE,** | § | |
|     **Defendants.** | § | |

<u>**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**</u>

Plaintiff, Rene Camacho ("Plaintiff"), has filed a civil action asserting claims under 42 U.S.C. §§ 1983 and 1985, and the Texas Tort Claims Act ("TTCA"). For the reasons set forth below, the Court recommends that Defendants' Motions to Dismiss be **GRANTED** in part with prejudice, and in part without prejudice to amending the complaint.

**PROCEDURAL HISTORY**

Plaintiff filed his amended complaint on October 30, 2015, naming as defendants: a municipal corporation, the City of El Paso, Texas, ("the City"); El Paso Police Department ("EPPD") Chief of Police Greg Allen ("Allen"); an attorney in EPPD Internal Affairs Division ("IAD"), Jennifer Callan ("Callan"); EPPD Supervising Officer Gabriel Peralta ("Peralta"); and EPPD Officer with the IAD Tyson Lee ("Lee"). (Doc. 2:1-4) Plaintiff sues each individual in their official and individual capacities. (Doc. 2:4)

The cause was assigned to United States District Judge Philip R. Martinez. Defendants were served. (Docs. 3-11) Motions to dismiss were filed by Defendants Allen, Callan, and the City of El Paso, jointly (Doc. 12); Defendant Lee (Doc. 13); and Defendant Peralta (Doc. 14).

Plaintiff filed a single response to all the motions to dismiss.  (Doc. 17)  Defendants filed separate replies (Docs. 18, 19, 21).

## PLAINTIFF'S CLAIMS AND REMEDY SOUGHT

Plaintiff asserts claims under Sections 1983 and 1985 for the violation of Plaintiff's various constitutional rights.  (Doc. 2:1)  He also asserts claims against Defendants under the TTCA.  (Doc. 2:1-2)

Specifically, Plaintiff asserts the following counts under Section 1983:

(Count 1) Police Abuse claims against Allen, Peralta, Lee, Callan, and the City, for violation of his Fifth and Fourteenth Amendment rights due to excessive use of force imposed by Peralta, under various theories of liability including ratification, inadequate training and supervision, and a custom of tolerance to constitutional torts (Doc. 2:19-20);

(Count 2) Conspiracy claims against Allen, Peralta, Lee, Callan, and the City for violation of his Fifth and Fourteenth Amendment rights including due process and equal protection (Doc. 2:20);

(Count 3) Refusing or Neglecting to Prevent claims against Lee for failing to properly investigate, and against Allen, Callan, and the City for failing to instruct, supervise, control, and discipline officers, and ratifying officers' misconduct, in violation of his Fifth and Fourteenth Amendment rights (Doc. 2:20-22).

Plaintiff asserts the following counts under the TTCA:

(Count 4) Assault claim against Peralta (Doc. 2:23);

(Count 5) Battery claim against Peralta (Doc. 2:23);

(Count 6) Conspiracy claims against Allen, Peralta, Lee, Callan, and the City (Doc. 2:23-25); and

(Count 7) Intentional Infliction of Emotional Distress claims against Allen, Peralta, Lee, Callan, and the City (Doc. 2: 25-26).[1]

Plaintiff seeks actual and punitive damages, attorneys fees, and costs.  (Doc. 2:26)

---

[1] Plaintiff inexplicably refers to a Buffalo Bill and an Officer Ed in stating his demands.  (Doc. 2:23)  The Court finds no other reference to such individuals or entities in Plaintiff's complaint.

## PLAINTIFF'S FACTUAL ALLEGATIONS

Briefly, Plaintiff contends that during his arrest, he was assaulted and beaten by Peralta, resulting in serious permanent bodily injuries.  (Doc. 2:4)  Peralta lied about the unjustified assault, and a conspiracy to cover-up such lie was ratified by Chief Allen.  *Id*.

### Use of Force

During the evening of October 31, 2013, Supervisor Peralta and EPPD Officer Judas Sanchez, in an unmarked EPPD vehicle which was assigned to Sanchez but being driven by Peralta, conducted surveillance on Plaintiff, placed a global positioning tracking device on Plaintiff's vehicle, observed him commit a non-violent property crime, and followed Plaintiff after Peralta observed him leave a parking lot at a high rate of speed.  (Doc. 2:8-9)  Neither of the Officers were in uniform nor had any clothing identifying them as law enforcement officers when they took Plaintiff into custody.  (Doc. 2:9)  Peralta observed Plaintiff throw unknown objects from the vehicle.  *Id*.  Peralta, exceeding the posted speed limits at all relevant times during the pursuit, was not in a vehicle permitted to conduct a traffic stop and called for a marked unit to assist in the traffic stop, but failed to provide information required by pursuit policy.  *Id*.  Peralta later denied to EPPD IAD that he was in pursuit.  *Id*.  Plaintiff crashed into a light pole and was apprehended by Officers Peralta and Sanchez.  *Id*.

Officer Sanchez removed Plaintiff from the vehicle and placed him in a facedown position, noting that he was not injured in the crash, but that Plaintiff was disoriented.  (Doc. 2:10)  Sanchez said that Plaintiff did not resist any EPPD officer at the accident scene.  *Id*.

Peralta grabbed Plaintiff's head and, without justification, began punching it into the pavement; he also struck Plaintiff's mid-section with a knee strike.  (Doc. 2:10)  Sanchez attempted to restrain Peralta, telling him to stop multiple times.  *Id*.  EPPD video from the

vehicle of EPPD Officers Virgin and Mena who arrived on the scene reflect that Plaintiff was face down during the assault.  *Id.*

Plaintiff sustained a broken nose, a broken facial bone, and broken ribs.  (Doc. 2:10)

Peralta falsified the facts to justify the level four use of force against Plaintiff and advised EPPD officers at the crash site that they would have to change the facts of the case to justify what had happened to Plaintiff.  (Doc. 2:10)

### Post-Use-of-Force

Peralta is Sanchez's supervisor.  (Doc. 2:11)  Sergeant John Surface ("Surface") reports to Lieutenant R. Liston ("Liston").  *Id.*  Liston is Peralta's superior in the chain of command. (Doc. 2:13)

Peralta called Liston at home after the incident to tell him about the injuries to Plaintiff's face.  (Doc. 2:13)  He told Liston that the injuries to Plaintiff's face were caused by the steering wheel and that there was no pursuit involved, they simply followed Plaintiff at the speed limit until Plaintiff crashed.  *Id.*

Sanchez told Surface about the high speed pursuit by Peralta, Peralta's beating of Plaintiff, and such was recorded in Surface's "Supervisor's Daily Log".  (Doc. 2:11-12)  Surface told Sanchez that he needed to talk with Liston.  (Doc. 2:11)

Liston made a sworn administrative statement to the EPPD IAD on December 5, 2013, stating that he was under direct order to disclose any and all information about the case which involved Peralta and provided the following information.  (Doc. 2:12)  Surface had called Liston on November 30, 2013 to tell him that officers had talked to him regarding issues with Peralta, that such officers had not felt comfortable coming to Liston and that Surface did not want Liston to tell the officers that he had told Surface about what they had said.  *Id.*  The officers believed

4

Peralta was close with the Chief's Office and they were concerned about Peralta retaliating against them.  *Id.*  Surface conveyed issues about Peralta being involved in constitutional rights violations, unauthorized pursuits, changing facts on reports, and others.  *Id.*  Liston had met with the officers on December 2, 2013 to tell them how serious the allegations were.  (Doc. 2:13)

On December 2, 2013, Liston made the following notations: Peralta is lying on important documents and is putting officers' and citizens' lives in danger, officers are being asked or told to violate constitutional rights and perjure themselves, morale is at an all-time low with officers wanting to transfer, cases will be lost at suppression hearings; officers do not trust Peralta and fear retaliation; Liston did not trust Peralta.  (Doc. 2:13-14)

Sanchez had said that the tracking device that had been attached to Plaintiff's vehicle would confirm that Peralta was speeding in triple digits, up to 105 miles per hour during the pursuit of Plaintiff in the unmarked vehicle.  (Doc. 2:14)  Sanchez said that Peralta does an excellent job of getting to the finishing line, but does not always get there the right way.  *Id.*

In another sworn statement to the IAD, Liston provided the following: officers clearly stated that they believed Peralta was well-connected to the Chief's Office and that he would be taken care of.  They felt that Liston wouldn't be of any help if they made the outcry to Liston. Liston did not think the officers were embellishing Peralta's conduct as he had worked with the officers previously and had never experienced an "embellishing" issue from them; and Liston believed Sanchez when he said that Peralta stated the facts of the pursuit of Plaintiff would have to be changed to justify that entire series of events.  (Doc. 2:14)

In a report dated December 4, 2013, Lee erroneously states that EPPD Officers attempted to contact Plaintiff in person and at his residence with no contact.  (Doc. 2:14)  Plaintiff alleges

that his wife would have told the officers that Plaintiff was in jail where he could have been interviewed. *Id.*

Sanchez informed the IAD several times, including in a sworn statement, that Peralta was not justified when he began to punch Plaintiff at the accident scene, stating "I don't recall how many times but I told him to stop as a marked unit arrived on the scene." (Doc. 2:15)

On January 7, 2014, Plaintiff was indicted for Aggravated Assault on Public Servant Officer Christopher Gates and for evading arrest with a motor vehicle arising out of the October 31, 2013 events. (Doc. 2:11)

An email dated January 14, 2014 forwarded to Callan on January 15, 2014, reflects that officers feel they brought forward some issues they felt were not right and now feel they are being retaliated against by the Department. (Doc. 2:15) The email set out things that needed to be considered about the incident, including: the fleet tracking/times/speed; the conversation Plaintiff had with the EMS and ER nurse; jail recording on Plaintiff after the arrest; the photos from Plaintiff's vehicle, noting there should be blood on the airbag if the crash caused the injury; and a statement that he was not comfortable with Callan, who is a friend and lawyer to Peralta, overseeing the investigation. (Doc. 2:15-16)

An IAD investigation was performed concerning Peralta. (Doc. 2:16)

No IAD investigation or complaints were filed regarding Peralta driving the unmarked vehicle in a high speed chase in violation of policies and procedures or Peralta denying under oath that he had done so, or Peralta's beating Plaintiff at the scene of the accident. (Doc. 2:17)

On February 25, 2014, the Discipline Review Board ("DRB") reviewed Peralta's conduct, and only considered and found the following allegations were unfounded, that: (1) Peralta violated Department pursuit policy by becoming involved in a pursuit of a vehicle in an

unmarked unit on October 31, 2013, and (2) that he violated Department policies, procedures rules and or regulations when he used force against Plaintiff by punching him in the face during his arrest. (Doc. 2:17)  The allegation that Peralta had exceeded the speed limit while following a vehicle on October 31, 2013 in an unmarked unit was sustained and Peralta was given an 8-hour suspension.  (Doc. 2:17)

After Allen considered the DRB's findings, he reduced Peralta's 8-hour suspension to a written reprimand.  (Doc. 2:17)

### Other

Plaintiff alleges that Allen became Chief of Police in 2008. (Doc. 2:5)

Plaintiff alleges the following facts concerning complaints lodged against Peralta prior to October 31, 2013: (Doc. 2:17-19) (1) April 30, 1999, CP99-103, dereliction of duty, departmental counseling; (2) September 19, 1999, CP99-159, allegation of unnecessary use of form, written reprimand; (3) October 1, 1999, CP99-186, use of force investigated; (4) November 22, 2002, use of force, *Luevano v. Peralta* et al, 3:04-CV-431-FM, terminated upon joint motion to dismiss by the parties after all things in controversy had been fully and finally compromised and settled (Doc. 71); (5) December 20, 2002, Jesus Luna alleged unnecessary force by Peralta resulting in a broken jaw.  *Luna v. Peralta*, 3:04-CV-455-HLH, terminated after jury trial with verdict and judgement for Defendant Peralta; (6) March 17, 2005, violation of procedures and policies sustained, received division counseling; (7) July 18, 2009, CP-09-114, dereliction of duty, received written reprimand; (8-30) Twenty-two other IAD case numbers concerning complaints pertaining to Peralta between 1999 and 2003, with no additional facts alleged.

**DISCUSSION**

## I.        Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 737-738 (S.D. Tex. 1998). In determining whether a complaint fails to state a claim upon which relief may be granted, "the court must accept all well-pleaded facts as true and view them in a light most favorable to the plaintiff." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess*, Inc., 407 F.3d 690, 696 (5th Cir. 2005). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). Though a complaint need not contain "detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (internal citations omitted). Thus, to state a claim, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id*. at 570. The challenged pleadings must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id*. at 555.

## II.        Civil Rights- Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

### A.    Count One: Excessive Use of Force and Theories of Liability

Plaintiff's first count alleges police abuse.  (Doc. 2:19)  He alleges that Peralta was not justified in the force used against Plaintiff, which was excessive to the need to take Plaintiff into custody and resulted in injuries to Plaintiff.  *Id.*  Plaintiff asserts that Allen, with final policy making authority for the EPPD had actual or constructive knowledge of Peralta's use of force against Plaintiff and ratified the physical abuse.  *Id.*  Plaintiff maintains that Callan was charged with the duty of supervising all IAD investigations and complaints, and consulting Allen regarding discipline, standards, training, policies, and accountability.  *Id.*  He charges that there exists in the EPPD a policy of inadequate training or supervision and a custom of tolerance or acquiescence of federal rights violations.  *Id.*  He avers that Defendants violated his Fifth and Fourth Amendment rights of the Constitution of the United States of America.  *Id.*

### 1.   Peralta: Excessive Use of Force

Peralta moves to dismiss Plaintiff's complaint against him based on Plaintiff's failure to allege sufficient facts to state a claim and Peralta's assertion of qualified immunity.  (Doc. 14:1-2)  Peralta advances two additional arguments for dismissal: that Plaintiff asserted his claim for excessive force under the wrong constitutional amendment and that his claim is *Heck*-barred. (Doc. 14:6-7, 10-11)  Plaintiff failed to respond to either of these arguments.  (*See* Doc. 17)

### a.      Wrong Constitutional Amendment

Defendants argue that Plaintiff's claim under count one for excessive force should have been raised as a Fourth Amendment violation and not a violation under either the Fifth or Fourteenth Amendments as Plaintiff asserted (Doc. 2), and as such, should be dismissed.  (Docs. 13:5; 14:6-7; 21:3-4)  In his response, Plaintiff does not directly address this argument, but cites to the Fourth Amendment standard for excessive force stated in *Bush v. Strain* to defend the sufficiency of his complaint to assert a claim upon which relief can be granted.  (Doc. 17:3, (citing *Bush v. Strain*, 513 F.3d 492, 500-501 (5th Cir. 2008) (addressing Fourth Amendment claim for excessive use of force against detainee for arrest purposes)))  Peralta does not reassert this argument for dismissal in his reply.  (Doc. 19)

Prior to *Graham v. Connor*, 490 U.S. 386 (1989), several cases held that "application of excessive, undue, and brutal force by law enforcement officers deprives a person of liberty without due process of law within the meaning of the Fourteenth Amendment." *Shillingford v. Holmes*, 490 F.Supp. 795, 796 (E.D. La. 1980) (collecting cases and citing *Hamilton v. Chaffin*, 506 F.2d 904, 909 (5th Cir. 1975)), *reversed by* 634 F.2d 263 (5th Cir. 1981).  In *Graham*, the Supreme Court held that a due process claim under the Fourteenth Amendment is appropriate only if the claim is not amenable to analysis under a specific constitutional source.  *Graham*, 490 U.S. at 393-395 (distinguishing between standards for excessive force claims under Fourth, Eighth, and Fourteenth Amendments).    The Fourth Amendment protects arrestees from unreasonable search and seizure, including excessive use of force during an arrest.  *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998).  Once an arrest is complete—'*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of

10

time[,]'" which could be several hours—the Fifth Amendment protects pretrial detainees from an excessive use of force.  *Id*., at 452 (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1443 (5th Cir. 1993) (emphasis in original)).   Thus, which Amendment applies depends on the plaintiff's status when the use of force occurred.  An excessive force claim related to an arrest, stop, or seizure is best analyzed under the Fourth Amendment's reasonableness standard.  *Graham*, 590 U.S. at 394-395.

Plaintiff has provided no authority or argument to support his assertion that the Fifth or Fourteenth Amendments and not the Fourth Amendment should apply to his excessive force claim.  His citation to the Fourth Amendment's excessive force standard in his response to defendants' motions to dismiss may indicate that he concedes the issue.  Because Plaintiff alleges excessive force was used against him while he was in the custody of the arresting officers and not later as a pretrial detainee, the Fourth Amendment most appropriately applies to his claim of excessive force.

The Supreme Court in 2014 clarified that for notice pleading, it is the factual allegations and not the legal theory pled that is of significance, and that *Iqbal* and *Twombly* addressed only the sufficiency of the factual allegations to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Johnson v. City of Shelby, Miss*., __U.S. __, 135 S.Ct. 346, 347 (2014) (*per curium*) (reversing summary judgment affirmed on appeal for failure to invoke 42 U.S.C. § 1983 in the complaint).  Following *Johnson*, but emphasizing that the plaintiff is the master of his complaint, at least one court has reconstrued a complaint raised under an incorrect constitutional amendment for analysis purposes and *sua sponte* granted leave to amend the complaint to raise the claim under the proper amendment, finding that granting such leave would not be futile.  *Hartman v. Walker*, No. 1:13CV355, 2015 WL 5470261, *6, 28 (E.D. Tex. 2015)

(excessive force claim was erroneously asserted under the Eighth Amendment where he had not been convicted).

For the reasons stated below, the Court cannot find, based on the parties' briefing and the facts alleged by Plaintiff, that had Plaintiff asserted a violation of the Fourth Amendment, his claim against Peralta would fail.  Thus, the Court recommends that Plaintiff's Section 1983 claim for excessive force predicated on Fifth and Fourteenth Amendment violations be dismissed, but that Plaintiff be given an opportunity to amend his complaint to raise such claim against Peralta under the Fourth Amendment.

### b.   *Heck* **Bar**

Peralta also alleges that Plaintiff's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Peralta alleges that Plaintiff was charged with, and pleaded guilty to, the offense of aggravated assault on a public servant arising out of the confrontation with Peralta. (Doc. 14:10-11)

Under *Heck*:

In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486 (emphasis in original).

*Heck* dictates that when a person . . . brings a section 1983 claim against the arresting officers the district court must first 'consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.' If so, the claim is barred unless the conviction has been reversed or declared invalid.

*Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000).  The Fifth Circuit has held that "based on *Heck*, an excessive force claim under section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events."  *Id.* (citing *Sappington v. Bartee*, 195 F.3d 234 (5th Cir. 1999)).  However, the Fifth Circuit has also found excessive force claims not barred by *Heck* based on previous convictions for assault or resisting arrest arising out of the same episode where the "civil claim was both conceptually and factually distinct from [the] criminal conviction" such that they can coexist "without calling into question any aspect of that conviction."  *Bush*, 513 F.3d at 497 (resisting arrest conviction) (citing *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (assault conviction)).

Plaintiff does not address Peralta's *Heck* bar argument in his response to Peralta's motion to dismiss.  (Doc. 17)  Plaintiff's complaint alleges that Plaintiff was indicted for aggravated assault on Officer Christopher Gates and for evading arrest with a motor vehicle arising out of the October 31, 2013 incident.  (Doc. 2:11)  Officer Gates is not mentioned anywhere else by either party, so it is unclear when such aggravated assault of Gates was alleged to have taken place during the October 31, 2013 incident.  (*See* Doc. 2:9)  Plaintiff alleged that the October 31, 2013 pursuit was initiated after he was witnessed to have committed a non-violent property crime.  (Doc. 2:9)  Plaintiff does not indicate whether Officer Gates was at the initial location where the pursuit began or at the arrest site after the crash, or in a vehicle somewhere along the pursuit.  It is not clear whether Plaintiff was alleged to have "nearly struck" Officer Gates with Plaintiff's vehicle while driving, with a part of his body, or in some other way.  Plaintiff's factual allegations, however,  suggest that only Officers Sanchez and Peralta were at the arrest site until Officers Virgin and Mena arrived.  (Doc. 2:9-10)  Plaintiff was apprehended by Peralta and

Sanchez.  (Doc. 2:9)  Plaintiff alleges that Sanchez stated that Plaintiff did not resist any EPPD Officer at the accident scene.  (Doc. 2:10)

Peralta's motion does not provide any illumination as to the facts underlying Plaintiff's conviction or how they correlate to the facts alleged by Plaintiff or Peralta regarding Plaintiff's arrest on October 31, 2013.  Nor did Peralta attach or supplement with any documents regarding Plaintiff's conviction that would so inform the Court.  (*See* Doc. 14:11-12)

Plaintiff does not mention that he pled guilty to the January 7, 2014 indictment and was convicted on such charges; nor does he indicate whether such conviction has been overturned or otherwise invalidated.  Plaintiff has provided no argument that a judgment in his favor against Peralta for excessive use of force would not necessarily imply the invalidity of his conviction for aggravated assault of Officer Gates.  However, it is not clear from the information in the record at this time that Plaintiff's factual allegation, that he was not resisting arrest when Peralta used force against him, conflicts with his guilty plea or would necessarily undermine his conviction for the assault of Officer Gates on that same date.  Without additional information supporting a finding that Plaintiff's claim is in fact barred by *Heck*, Plaintiff's claim should not be dismissed on this basis.

### c.      Failure to State a Claim & Qualified Immunity

Peralta claims that he is entitled to qualified immunity because all actions pled by Plaintiff occurred during the performance of Peralta's discretionary duties and did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  (Doc. 14:3-7 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982)))  Peralta emphasizes that "[e]xcessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity."  (*Id.* (citing *Ontiveros v. City of*

*Rosenberg*, 564 F.3d 379, 383 n. 1 (5th Cir. 2009)))  Peralta also argues that Plaintiff failed to allege sufficient facts to state a claim for excessive use of force.  (Doc. 14:7-10)

Qualified immunity protects a government official's performance of discretionary functions from civil liability when the official's conduct has not violated clearly established federal statutory or constitutional rights of which a reasonable person would have been aware, even if the defendant's alleged conduct violated other standards such as internal guidelines, ethical principles, regulations or statutes.  *Davis v. Scherer*, 468 U.S. 183, 191, 194 (1984). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" from not only liability, but the burdens of defending against claims, including engaging in the process of discovery.  *DePree v. Sanders*, 588 F.3d 282, 287 (5th Cir. 2009).

Qualified immunity is evaluated under a two-part test: (1) "whether the facts that a plaintiff has alleged [] make out a violation of a constitutional right[,]" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "To be clearly established . . . , the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *Kinney v. Weaver*, 367 F.3d 337, 349-350 (5th Cir. 2004) (*en banc*)) (internal citations and alterations omitted).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  Where qualified immunity is raised in a motion to dismiss for failure to state a claim, the plaintiff's burden is satisfied if "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."  *Backe v. LeBlanc*, 691 F.3d 645, 648

(5th Cir. 2012).  In other words, the plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id*.

To state a claim of excessive force, a plaintiff must allege "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros*, 564 F.3d at 382; *Bush*, 513 F.3d at 501.  Determining whether the force used during a particular arrest is objectively reasonable under the Fourth Amendment standard involves balancing the individual's rights against the governmental interests involved. *Graham*, 490 U.S. at 396-397.  Such reasonableness must be judged from the perspective of a reasonable officer on the scene, not from hindsight, recognizing that police make split-second judgments in "tense, uncertain, and rapidly evolving" circumstances about what amount of force is necessary in the specific situation. *Id*.  Factors to consider regarding the reasonableness of the force used include: (1) "the extent of injury suffered []," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (addressing Eighth Amendment excessive force claims)).  Specifically in Fourth Amendment excessive force cases, factors to consider also include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Peralta acknowledges that "[r]egardless of what transpired before the incident, the excessive force inquiry is confined to whether the officer was in danger at the moment of the

threat that resulted in the force." (Doc. 14:8 (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992)))  A certain degree of force is impermissible after an arrestee has already been restrained and is no longer resisting arrest or attempting to flee.  *Bush*, 513 F.3d at 502 (finding force used to force plaintiff's face into the rear window of a vehicle, injuring her jaw and breaking two of her teeth sufficient, after the plaintiff was restrained and subdued impermissible).

At the time of Peralta's alleged use of force, "the law was clearly established that although the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee.  *Bush*, 513 F.3d at 502.

Plaintiff alleged facts supporting a finding that he sustained an injury which resulted directly from Peralta's use of force.  Plaintiff alleges that he sustained a broken nose, facial bone, and ribs from Peralta's use of force.  (Doc. 2:10)  He alleges that although he had just crashed his car into a light pole, the air bag had deployed and photographs reflect that there was no visible blood on the airbag.  *Id*.  He further alleges that Sanchez has stated that Plaintiff was not injured in the crash, but was disoriented.  *Id.*

Peralta disputes that Plaintiff has alleged sufficient facts to support a finding that Peralta's use of force was clearly excessive and unreasonable.  (Doc. 14:10)  Plaintiff alleges that Sanchez had removed Plaintiff from the vehicle and had placed him face down and reported that Plaintiff did not resist any EPPD officer at the accident scene.  (Doc. 2:10, 11)  Peralta emphasizes that Plaintiff had in fact evaded arrest before crashing his vehicle, but as Peralta recognized, it is on the moment when force is used that the Court must focus.  Although Peralta

disputes the assertion, Plaintiff alleges that he did not resist arrest after his crash.  Thus, the Court must accept as true that he was not actively resisting arrest or attempting to evade arrest by flight at the time of the alleged use of force.  Nor do the severity of the crimes alleged to have occurred before the crash (nonviolent property crime, high speed car chase), or any other facts alleged by Plaintiff, suggest that Plaintiff posed an immediate threat to the safety of the officers or others after the crash.  Plaintiff alleges that while Plaintiff was face down, Peralta grabbed and punched Plaintiff's head against the pavement several times and struck Plaintiff's mid-section with a knee strike. (Doc. 2:10) Taking Plaintiff's allegations as true and viewing them in the light most favorable to Plaintiff, Peralta's use of force was clearly excessive and unreasonable.

Taking Plaintiff's allegations as true, Plaintiff has sufficiently stated a claim against Peralta for violating his constitutional rights to be free from excessive use of force.  Taking Plaintiff's allegations as true, such allegations overcome Peralta's claim of qualified immunity at this motion to dismiss stage of proceedings.  As noted above, Peralta's motion to dismiss on Count One should be granted without prejudice to Plaintiff amending his complaint to raise such claim under the appropriate constitutional amendment.

### 2. The City, Allen, Callan, and Lee: Ratification, Inadequate Training and Supervision, Custom Tolerant of Civil Rights Violations

In Count One, Plaintiff also includes several theories by which he seeks to hold the remaining defendants liable for Peralta's alleged excessive use of force.  (Doc. 2:19)  Plaintiff argues liability based on ratification, inadequate training and supervision, and a custom tolerant of civil rights violations.  *Id.*

A Section 1983 claim must be based on a defendant's actual participation in an event that causes a violation of civil rights.  *See Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120,

123 (5th Cir. 1980).  "Personal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

Under Section 1983, supervisory officials are not liable for the actions of subordinates based on theories of *respondeat superior* or vicarious liability.  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Rather, a plaintiff must allege specific facts demonstrating that the supervisory official's conduct denied the plaintiff constitutional rights by:  (1) affirmatively participating in the constitutional deprivation; or (2) performing or failing to perform responsibilities such as implementing policies or supervising or training subordinates in such a way that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation; (3) and that such was done with deliberate indifference to the known or obvious fact that such constitutional violations would result.  *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Mouille v. City of Live Oak*, *Tex.,* 977 F.2d 924, 929 (5th Cir. 1992), *cert. den*., 508 U.S. 951.

Plaintiff attempts to hold Lee liable for Peralta's excessive use of force, but fails to identify any way in which Lee, who was not present during the use of force and is not alleged to be either a supervisor or a policymaker, could be held liable for Peralta's excessive use of force.  The Court recommends that Plaintiff's claim of excessive use of force against Lee be dismissed with prejudice for failure to state a claim upon which relief could be granted on all of the theories Plaintiff advances.

Although Plaintiff alleges that Callan has supervisory responsibilities, he does not allege that she supervises Peralta or is responsible for establishing policies governing Peralta.  (Doc. 2:8)  Thus, the Court recommends that Plaintiff's claim of excessive use of force against Callan

be dismissed with prejudice for failure to state a claim upon which relief could be granted on all of the theories Plaintiff advances.

    As Chief of Police, Allen is responsible for the ultimate supervision of the entire EPPD. (Doc. 2:5-8)  Thus, the Court will consider whether Plaintiff has established supervisory liability for Allen under any of his theories of liability.

    In addition to his individual-capacity claims, Plaintiff asserts claims against the City and official-capacity claims as to each of the individual defendants.  (Doc. 2:3-4)  A claim against defendants in their official capacity is a claim against the "entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).  Thus, claims against the individual defendants in their official capacities are also claims against the City.  The Court recommends that the official capacity claims as to each individual defendant be dismissed with prejudice as duplicative of the claims Plaintiff has asserted against the City.

    While a city can be held liable under Section 1983, it cannot be held liable for constitutional torts committed by its employee, unless such employee's actions are attributable to the municipality through some sort of official action or approval, because under Section 1983, it must be the defendant that causes the plaintiff to be subjected to a deprivation of a federal right. *See Graham*, 473 U.S. at 166; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 663 n. 7, 692-695 (1978).  In other words, a city cannot be liable based on a theory of *respondeat superior* or vicarious liability. *Monell,* 436 U.S. at 663.  It can only be held liable for constitutional violations that are the result of official city policy or custom.  *Id*. at 694. Therefore, to assert a claim for municipal liability under Section 1983, a plaintiff must allege (1) a policymaker with final policymaking authority; (2) an official policy or custom; and (3) a violation of a constitutional right whose "moving force" is the policy or custom.  *Id.* at 694;

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).   There must be direct causation, a direct causal link between the policy and the violation, more than a mere 'but for'. *Fraire*, 957 F.2d at 1281; *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009).

An official policy can be either (1) a written law or express policy statement, ordinance, regulation, or decision officially adopted and promulgated by an official with final policymaking authority as a result of a decision or acquiescence, or (2) a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so [permanent,] common and well-settled as to constitute a custom [or usage] that fairly represents [a] municipal policy [with the force of law]." *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841, 849 (5th Cir. 1984) (alterations adding other phrases from *Webster*)); *Peterson,* 588 F.3d at 847.

To establish an official policy as a persistent, widespread custom, a plaintiff should at least allege "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread through the police force." *Fraire,* 957 F.2d at 1278 (quoting *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir. 1983), *cert. denied,* 467 U.S. 1215 (1984)).   "[T]he existence of a persistent pattern of illegal conduct, tolerated by municipal policymakers, tends to show that the subject conduct does not represent an unauthorized departure from lawful policy but instead represents the realization of an unlawful policy." *Milam v. City of San Antonio*, 113 Fed. Appx. 622, 625 (5th Cir. 2004).

A customary policy cannot ordinarily be inferred from a single violation. *Piotrowski*, 237 F.3d at 581.   Single or isolated events, episodes, or actions by city employees almost never

subject a city to liability unless such employee has final policymaking authority.  *Id.* at 578; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986).  A final policymaker's single decision to adopt a particular course of conduct, even if it is not intended to be part of any policy, custom, plan, or rule to govern future situations, can subject the city to liability.  *Pembaur* 475 U.S. at 481-483; *Milam*, 113 Fed. Appx. at 626.  In *Praprotnik*, the Supreme Court described a possible situation in which a municipality could be held liable for a single, isolated act or decision of a non-policymaking employee if such was later ratified by one with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

Thus, municipal liability may result not only from a facially unconstitutional written policy or widespread persistent custom about which the final policymaker has actual or constructive notice, but also from illegal or unconstitutional actions of the policymakers themselves or from the policymaker condoning or otherwise adopting the creation of a policy by knowingly ratifying the illegal or unconstitutional actions of subordinate non-policymaking employees. *See Pembaur,* 475 U.S. at 480; *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990); *Santibanes v. City of Tomball, Tex.*, 654 F.Supp.2d 593, 611 (S.D. Tex. 2009).

### a.        Ratification Liability

Plaintiff asserts that, subsequent to Peralta's use of excessive force, the remaining defendants ratified Peralta's use of force and are therefore liable for it.  (Doc. 2:19)

In *Grandstaff*, a case prominently featured in the discussion of ratification liability in the Fifth Circuit, three police cars engaged in a high speed chase after Cox refused to pull over when signaled, during which time "gunfire erupted" and Cox was injured.  *Grandstaff v. City of Borger*, 767 F.2d 161, 165 (5th Cir. 1985).  Cox pulled off the highway, drove through a fence, and stopped near a ranch house, where he exited his car and more gunfire ensued, a bullet hitting

the house.  *Id*.  Grandstaff exited the ranch house to investigate, heard the officers announce they were after an individual on his property, returned to the house to warn his family, and then got in his truck and drove toward the officers, at which time five police opened fire on him from two sides, resulting in Grandstaff's death.  *Id*.  After this "incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error."  *Id*.  at 171.  The Fifth Circuit determined that if an "episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger."  *Id*.  The Court reasoned: "[t]his reaction to so gross an abuse of the use of deadly weapons says more about the existing disposition of the City's policymaker than would a dozen incidents where individual officers employed excessive force… [T]he subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy."  *Id*.

Later, in *Praprotnik*, the Supreme Court discussed an independent ratification theory of municipal liability, describing a situation in which a subordinate's decision could be interpreted as a policy statement expressly approved by an employee with final policymaking authority, such that it could be deemed to be a policy adopted by the final policymaker that just happened to have been formulated or initiated by a subordinate.  *See Praprotnik*, 485 U.S. 112.  The court explained:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id*. at 127 (emphasis in original).

According to *Praprotnik*, ratification liability requires that the authorized policymakers approve not only the subordinate's act, but also the basis for it. *Praprotnik*, 485 U.S. at 127. This means that the policymaker must have actual knowledge of the improper basis for the subordinate's action and yet approve the action anyway. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001).

A policymaker who goes along with a subordinate's decision without investigation or who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality. *Peterson*, 588 F.3d at 848. Nor does an isolated decision not to discipline a single officer for a single incident of illegality, without more, evince intent to ratify the act and basis therefore. *Fraire*, 957 F.2d at 1278-1279 (finding allegation that city knew the officer was lying was pure conjecture based on relatively minor discrepancies between the officer and bystanders). Further, where a Police Chief has accepted his subordinate's version of events, courts have found no ratification liability unless the subordinate's actions were "manifestly indefensible" under that version. *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986); *Hobart v. City of Strafford*, 916 F.Supp.2d 783, 795, 797 (S.D. Tex. 2013) (determining that a jury could find officer's version manifestly indefensible where act was an obvious violation of clearly established law). However, where an investigation is performed, deficiencies in the investigation may support an inference of ratification even where the court does not find the officer's version manifestly indefensible. *See Santibanes*, 654 F.Supp.2d at 613-614. Where the investigation does not comport with ordinary procedures for reviewing use of force, where the policymaker decides not to view evidence raising questions about the plausibility of the subordinate's version of events, where a policymaker fails to obtain information necessary to, or

does not assess the reasonableness of the force used, such factors may be indicative of ratification. *See Hobart*, 916 F.Supp.2d at 797.

In *Hobart*, the court summarized several pieces of evidence regarding the incident that suggested the indefensibility of the officer's version of events and the investigation—the investigation failed to comport with ordinary procedures for reviewing use of deadly force and the policymaker failed to interview the officer who used force and failed to assess whether the force used was reasonable—and determined the policymaker's determination was indicative of ratification. *Hobart*, 916 F.Supp.2d at 797.

In *Santibanes*, the court considered the fact that: (1) the Chief found no fault with any of the officers' actions despite several apparent violations of policies and procedures, (2) the Chief's decision not to view the dashboard video which called into question the plausibility of the officer's version of events which the Chief had accepted, and (3) the Chief's failure to discipline the officer, and found indicia of a policy of superiors turning a blind eye to improper conduct sufficient to survive summary judgment. *Santibanes*, 654 F.Supp.2d 613. The court found that such policy was the moving force behind the alleged excessive force violation. *Id.*, at 614.

Regarding causation, the Supreme Court's discussion, in *Praprotnik*, of the ratification theory of municipal liability, though it mentioned the policymakers measuring the conduct for conformance with municipality policies, did not indicate that such liability would be necessarily be premised on an assumption that the ratification reflected a municipality's preexisting policy, since policymakers can make and change policy at any time. *See Hobart*, 916 F.Supp.2d at 792-793; *Milam*, 113 Fed. Appx. at 626. Focusing on the causation requirement for municipal liability, Defendants argue that *Praprotnik* is distinguishable. Defendants argue that a later

"ratification" of an alleged excessive use of force could not violate Plaintiff's rights in any way and could not cause the alleged use of force. (Docs. 12:4; 13:4-5; 18:3-4; 21:3)

   *Praprotnik* involved an employment context where the decision to transfer or lay off an employee in retaliation for exercising First Amendment rights could be reviewed by those with final policymaking and decision-making authority in an appeal or grievance initiated by the employee.  *See Praprotnik*, 485 U.S. at 127.  Unlike an employment decision which might be reversed upon review, the constitutional injury resulting from an excessive use of force would appear to be final and complete at the time of its application; not amenable to later alteration or reversal, such that it could be said to not be "final" until reviewed by those with final policymaking authority when a complaint is filed.  Thus, this Court joins other courts in questioning the viability of a ratification theory independent of indicia of a pre-existing policy or custom analysis in the excessive force context due to the lack of logically possible causation.  *See Hobart*, 916 F.Supp.2d at 794-796; *Briggs*, 2014 WL 1050752 at *5.

   While the Fifth Circuit has discussed the ratification theory of municipal liability, post *Praprotnik*, and has not precluded its theoretical application in excessive force contexts, it has not indicated that the causation requirement of *Monell* would be relaxed in order for such theory of liability to be successful; it has consistently emphasized the causation requirement.  *Peterson,* 588 F.3d at 848 (including causation in elements of municipal liability; rejecting ratification theory finding no extreme factual situation presented); *Milam,* 113 Fed. Appx. at 628 (emphasizing causation requirement, suggesting ratification combined with other evidence to support an inference of a preexisting policy might be sufficient); *see also Santibanes*, 654 F.Supp.2d at 612-613 (discussing Fifth Circuit cases); *Hobart*, 916 F.Supp.2d at 795 (same).  In *Snyder*, the Fifth Circuit, recognizing the tension between the ratification theory discussed in

26

*Praprotnik* and the basic requirements for municipal liability set forth in *Monell*, stated that such "requirements must not be diluted" such that "municipal liability collapses into *respondeat superior* liability." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Board of County Com'rs of Bryan County, Okl v. Brown*, 520 U.S. 397, 415 (1997)). Consequently, Fifth Circuit cases analyzing ratification liability for excessive force claims suggest that it still requires a showing that preexisting policy was the moving force behind the constitutional deprivation. *See Milam,* 113 Fed. Appx. 628 (though response to a particular incident may not cause the injury, it might provide evidence of a preexisting policy that did); *Snyder,* 142 F.3d 791 (emphasized absence of evidence suggesting a culture of recklessness from the sole incident that went unpunished); *Grandstaff*, 767 F.2d at 171 (subsequent acceptance of dangerous recklessness tended to prove his preexisting disposition and policy).

Further, the Fifth Circuit has limited the theory of ratification liability to "extreme factual scenarios". *See WorldWide Street Preachers Fellowship v. Town of Columbia,* 591 F.3d 747, 755 (5th Cir. 2009) (stating theory limited to sufficiently extreme circumstances, but finding no ratification of basis for actions taken); *Peterson,* 588 F.3d at 848 (recognizing precedent limited theory of ratification to extreme factual situations, and comparing *Grandstaff* with *Snyder,* court could not find facts rose to such level where, while in cuffs and not resisting, officer slammed plaintiff against the truck and inflicted hard knee strike to thigh, rupturing a femoral artery requiring two surgeries to repair); *Snyder*, 142 F.3d at 798 (refusing to find ratification where officer shot fleeing suspect in the back, rendering him paralyzed, finding situation not equally extreme or extraordinary as existed in *Grandstaff*); *Coon*, 780 F.2d at 1161-1162 (finding that *Grandstaff* court emphasized the extraordinary facts of the case such that its analysis can only be applied to equally extreme factual situations; did not find officers' versions which Sheriff

27

accepted to be manifestly indefensible, where officers investigating a bar brawl and hit and run found the suspect who then armed himself and fired his gun and officer fired in response hitting the suspect); *see also*; see also *Hobart*, 916 F.Supp.2d at 796 (questioning continued validity of limitation to extreme scenarios stemming from *Grandstaff*, a pre-*Praprotnik* case, but comparing to *Grandstaff* due to "lack of any other successful ratification claims premised on excessive use of force." Finding facts presented may be sufficiently extreme to proceed past summary judgment where officer, responding to 911 call to assist in transporting a citizen to the hospital who was hallucinating and becoming violent, used deadly force after he was hit by citizen and was in the process of passing out).

Plaintiff asserts that Allen had final policymaking authority for the EPPD. (Doc. 2:5, 19) Defendants do not dispute this assertion. As discussed above, Plaintiff has alleged sufficient facts to state an excessive use of force claim against Peralta, a constitutional violation for which Plaintiff seeks to hold the remaining defendants liable based on Allen's ratification of Peralta's conduct.

The Court initially notes that Plaintiff cites to no authority for asserting a Section 1983 individual-capacity claim against a supervisor based on post-violation ratification. In *Hobart*, the court found as a matter of law that no individual-capacity claim could be stated against the supervisory official based on a subsequent ratification of a subordinate's allegedly excessive use of force, based on lack of causation. *Hobart*, 916 F.Supp.2d at 799. Like the *Hobart* court, this Court is aware of no cases that impose post-violation ratification liability on a supervisor in his individual capacity. Further, Plaintiff has failed to allege that either Lee or Callan are final policy makers with the authority to ratify Peralta's conduct. Consequently, the Court

recommends that Plaintiff's individual-capacity claims against Allen, Callan, and Lee based on an alleged ratification of Peralta's excessive use of force be dismissed with prejudice.

Thus, the Court will address whether Plaintiff has alleged sufficient facts to establish ratification and causation to hold the City liable for the alleged excessive use of force.  First, Plaintiff must allege facts to show that Allen approved Peralta's use of force and the basis for it, knowing the improper basis for such use of force. *See Praprotnik*, 485 U.S. at 127.

Plaintiff alleges that Allen was charged with actual or constructive knowledge of the physical abuse by Peralta. (Doc. 2:19)  Plaintiff alleges that an IAD investigation was performed concerning Peralta's interaction with Plaintiff.[2]  (Doc. 2:16-17)  He cites provisions of the EPPD Procedures Manual stating that the IAD will prepare appropriate pre-disciplinary paperwork for review by the Chief and that the Chief of Police will receive the case from the IAD with pre-disciplinary paperwork and will approve and sign all disciplinary decisions.   (Doc. 2:6-7) Plaintiff alleges that after Allen considered the DRB's findings, he reduced the 8-hour suspension to a written reprimand on the sole sustained finding of the DRB that Peralta exceeded the posted speed limit while following a vehicle; and approved the DRB conclusion that a use of force allegation was unfounded.  (Doc. 2:16-17)  Thus, Plaintiff has sufficiently alleged that Allen reviewed Peralta's alleged use of force and approved it.

Plaintiff must also allege that Allen approved the improper basis for Peralta's use of force.  Without more, a decision accepting the officer's version of events which is not itself manifestly indefensible, is not a basis for ratification liability.   *See Coon*, 780 F.2d at 1162. Plaintiff's only allegation regarding Peralta's version of the events is that he claimed that

---

[2] Oddly, Plaintiff alleges that no IAD investigation was conducted regarding Peralta's use of force and the subsequent injuries sustained by Plaintiff, although one of the issues the Discipline Review Board determined to be unfounded  was an allegation that Peralta violated rules when he used force against Plaintiff by punching him in the face during his arrest.  (Doc. 2:15, 17)  Plaintiff also alleges other facts regarding the IAD investigation that indicates that such investigation was conducted.

Plaintiff's injuries were caused by the steering wheel, that no pursuit was involved, and that he followed Plaintiff at the speed limit until Plaintiff crashed.  (Doc. 2:13)  There is no allegation that Peralta admitted to any use of force or provided a basis for it.  Certainly, under Plaintiff's allegations concerning Peralta's version of events, involving no use of force, Peralta's actions were not manifestly indefensible.  In his motion to dismiss, Peralta alleges that Plaintiff resisted arrest, requiring a struggle between Plaintiff and Peralta to effectuate Plaintiff's arrest, which also does not appear to be manifestly indefensible. (Doc. 14:2-3)  However, this version of events was not alleged by Plaintiff or Defendants to have been submitted for Allen's review. (Docs. 12, 13, 14)  It is theoretically possible that Allen accepted Peralta's version of events as not involving a use of force.  Plaintiff, however, also alleges facts regarding the IAD investigation that may be indicative of ratification.  *See Hobart*, 916 F.Supp.2d at 796-797; *Santibanes*, 654 F.Supp.2d at 613-614.

Viewing Plaintiff's allegations in the light most favorable to Plaintiff and assuming their truth, as the Court must, it appears that Allen's determination that an allegation of excessive use of force against Peralta was unfounded resulted notwithstanding statements submitted to the IAD for the investigation, by fellow officers calling into question the veracity of Peralta's version of events and referring to potential evidence that objectively refuted aspects of Peralta's version of events.  (Doc. 2:11-16)  Sanchez's sworn statement to the IAD stated that Peralta was not justified when he began to punch Plaintiff at the accident scene and that he told Peralta to stop numerous times. (Doc. 2:15)  No statement was obtained from Plaintiff, who was being detained in jail and available to be interviewed. (Doc. 2:14-15) There was evidence that Peralta had lied about at least one aspect of the incident—speeding—and that objective evidence was available that contradicted the veracity of his other statements, such as the cause of Plaintiff's injury being

the steering wheel and the lack of blood on the airbags. (Doc. 2:13, 15)  There is no specific allegation that Allen actually reviewed all of the papers and evidence in the IAD disciplinary file or made a decision not to obtain or view the available evidence that undermined Peralta's version of events.  Such allegation is at least implicit in Plaintiff's complaint.

Unlike in *Fraire* where the court found that the plaintiff had failed to show that the policymaker had knowledge that the officer was lying about the version of events, discounting the factual disputes raised by statements from bystanders, in this case, there was a sworn statement by another officer at the scene essentially stating that Peralta used excessive force. (Doc. 2:13, 15, 17); *Fraire*, 957 F.2d at 1278-1279.

Similar to the situation in *Santibanes*, Plaintiff highlights various additional departmental policies that Peralta violated and objective evidence supporting a finding that such policies were violated, including one allegation that was sustained based on a finding contrary to Peralta's version of events, calling into question Peralta's veracity regarding the remaining allegations. *See Santibanes*, 654 F.Supp.2d at 613.  Plaintiff's allegations additionally suggest that additional evidence existed and was identified in the IAD file that would have provided a foundation for the other alleged violations, but was not obtained as part of the investigation.  (Doc. 2:15-16)

Plaintiff additionally alleges that Liston submitted sworn statements to the IAD reporting issues with Peralta and stating that he believed Sanchez when he said that Peralta had said the facts of the pursuit would have to be changed to justify the entire series of events.  (Doc. 2:12-14)  Liston also stated in his notes that Peralta was lying on important documents and putting officers' and citizens' lives in danger, and that he did not trust Peralta.  (Doc. 2:12-14)  In his sworn statements, Liston also noted that the other officers voicing complaints about Peralta believed that Peralta was close with and well-connected to the Chief's Office, such that the

officers believed that Peralta would be "taken care of" regardless of whether they made an outcry against Peralta, and that they feared retaliation for any such outcry.  (Doc. 2:12-14)

The Court finds Plaintiff's allegations sufficient to allege that Allen had actual or constructive knowledge that Peralta's version of the incident was incorrect and that his use of force was not justified, such that Allen's disposition of the disciplinary proceedings could be sufficient to establish a municipal policy through ratification of Peralta's actions.  *See Santibanes*, 654 F.Supp.2d at 613-614.

Plaintiff must also allege sufficient facts to establish that such policy was the "moving force" behind Peralta's excessive use of force.  *See Piotrowski*, 237 F.3d at 578.  Plaintiff's additional allegations suggesting that multiple officers believed there to be a pre-existing policy of permissiveness regarding constitutional violations committed by Peralta, might be sufficient to establish the requisite causation.  Construed most favorably to Plaintiff, one could reasonably infer that Peralta believed, as did the other officers, that any violations, including excessive use of force, that Peralta committed would go essentially unpunished and be approved by Allen, such that Plaintiff's allegations are sufficient to establish that such policy of permissiveness was the moving force behind the alleged excessive use of force.  *See Santibanes*, 654 F.Supp.2d at 614 (finding it reasonable to infer that the subordinate used deadly force with the knowledge that the city would not impose any consequences for his actions, such that the policy as alleged affirmatively caused and was the moving force behind the alleged constitutional violation.).

Plaintiff, however, must additionally establish that the facts of his case present a sufficiently extreme factual scenario to justify application of the ratification theory of liability.  The facts of *Grandstaff*, the only case in which the Fifth Circuit has found the ratification theory of municipal liability to apply, set the bar extremely high.  Even viewing Plaintiff's allegations in

the light most favorable to Plaintiff and assuming their truth, the Court is unable to find that Plaintiff presents an equally extreme factual scenario.  Consequently, and without further guidance from the Fifth Circuit, the Court is unable to find that ratification liability is available to Plaintiff in this case as a mechanism to hold the municipality responsible for Peralta's alleged use of excessive force.

For the reasons stated above, the Court recommends that the Plaintiff's ratification liability claim against the City for Peralta's excessive use of force be dismissed with prejudice.

### b.    Inadequate Training and Supervision

Plaintiff next asserts a claim against Allen, Callan, Lee, and the City for excessive use of force caused by a policy of inadequate training or supervision within the EPPD.  (Doc. 2:19)

To prevail on a failure to train or supervise claim against supervisory officials, Plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-912 (5th Cir. 1998)); *Santibanes*, 654 F.Supp.2d at 614.  Similarly, to hold the City liable for the employee's failure to train or supervise, Plaintiff must demonstrate that (1) the training  and supervision policy procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting such policies, and (3) the inadequate training and supervision policies directly caused Plaintiff's injury.  *See Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *see also City of Canton v. Harris*, 489 U.S. 378, 389-392 (1989); *Pineda v. City of Houston*, 291 F.3d 325, 331-332, 335 (5th Cir. 2002).

For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To establish deliberate indifference, Plaintiff can allege facts which demonstrate that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. To show deliberate indifference in this context, a plaintiff must demonstrate "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (internal citations omitted).

Plaintiff alleges that Allen is ultimately responsible for the supervision and training for the EPPD. (Docs. 2:5-7, 19; 17:6) Plaintiff's complaint focuses on Allen's actions subsequent to Peralta's use of force, with respect to the IAD investigation and ultimate disciplinary determination. (Doc. 2:17, 19) Even assuming Plaintiff alleges that Allen failed to adequately train or supervise employees with respect to conducting IAD investigations or the DRB's review of such investigation to provide a recommendation to Allen, Plaintiff has failed to allege any facts from which it could be inferred that such deficient training or supervision caused Peralta's excessive use of force. Nor has Plaintiff alleged facts demonstrating that any inadequacy in Allen's training or supervision of such employees was the result of deliberate indifference.

Plaintiff does not allege any specific actions taken by Allen prior to Peralta's use of force. Nor does Plaintiff specifically allege in what way Allen's training and supervision of his employees was inadequate that it could have caused Peralta's excessive use of force.

Plaintiff's allegations include twenty-nine prior complaints regarding Peralta prior to October 31, 2013, spanning from 1999-2009, accompanied by varying degrees of facts regarding such complaints.  (Doc. 2:17-19)   Amongst the complaints are at least four allegations of excessive force.  *Id.*  Plaintiff does not detail the disciplinary action taken on each of the complaints, but notes that two resulted in departmental counseling and two resulted in a written reprimand.  *Id.*  The Court notes that Plaintiff does not allege any complaints lodged against Peralta between July 18, 2009 and October 2013, a span of over four years prior to Peralta's alleged excessive use of force.  Further, Plaintiff alleges that Allen was appointed Chief of Police in 2008.  (Doc. 2:5)   It appears that only one of the twenty-nine prior complaints alleged occurred after Allen became Chief; it was in 2009 for dereliction of duty, for which Peralta received a written reprimand.  Further, Plaintiff does not allege any deficiencies in the processing of such prior complaints or with respect to Allen's final disciplinary decisions regarding such complaints to support a finding of inadequate training or supervision.  Nor does Plaintiff allege facts from which one may infer inadequate training or supervision from the absence of complaints filed against Peralta since Allen became Police Chief.

Plaintiff has not sufficiently alleged any acts of training or discipline that Allen took prior to Peralta's use of force against Plaintiff to establish that there was a policy of inadequate training or supervision about which Allen was deliberately indifferent, which caused Peralta's use of force.  It follows that Plaintiff has failed to allege sufficient facts to state a claim against the City for failure to train or supervise.  The Court recommends that Plaintiff's claims against Allen and the City based on a policy of failing to adequately train or supervise be dismissed with prejudice.

### c.      Custom Tolerant of Civil Rights Violations

Plaintiff seeks to hold Lee, Callan, Allen, and the City liable for Peralta's excessive use of force based on the theory that a custom of tolerance of or acquiescence to federal rights violations within the EPPD caused the excessive use of force.  (Doc. 2:19)

Under this theory, Plaintiff must allege facts to support a finding that a persistent and widespread custom existed, about which a supervisor or policymaker had knowledge and condoned with deliberate indifference to its consequences, which was the moving force behind Peralta's use of force.  *See Piotrowski*, 237 F.3d at 578-579.

To establish an official policy as a persistent, widespread custom, a plaintiff should at least allege "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread through the police force."  *Fraire,* 957 F.2d at 1278 (quoting *Languirand*, 717 F.2d at 227).  A final policymaker must have had actual or constructive knowledge of such custom for it to be attributable to the municipality.  *Webster*, 735 F.2d at 841; *Piotrowski* 237 F.3d at 579.  Constructive knowledge may be inferred from the widespread nature of the custom, general knowledge of its existence, and opportunities and responsibilities of responsible policymakers to be informed.  *Pineda*, 291 F.3d at 330 & nos. 13-15 (finding 13 incidents of misconduct legally insufficient to prove a widespread custom about which the city should have had constructive knowledge); *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *12 (W.D. Tex. Nov. 15, 2006) (finding allegation of hundreds of complaints sufficient to proceed past motion to dismiss). A plaintiff must demonstrate 'a pattern of abuse that transcends the error made in a single case.' *Peterson*, 588 F.3d at 850-851 (citations

omitted)." *Villalba v. City of Laredo*, No. 5:14-CV-17, 2015 WL 5038337 at *5 (S.D. Tex. Aug. 26, 2015).

With respect to Allen, in section IIA2a above, the Court found that Allen ratified Peralta's use of force and the basis therefore and that there was sufficient indicia of causation based on a belief by numerous other officers that Peralta's violation would go unpunished due to his particular relationship to the Chief's office, which belief, if Peralta also possessed it, could have been the moving force behind his excessive use of force. Such finding was not based on finding a general widespread persistent custom of tolerance or acquiescence of federal rights violations throughout the EPPD.

Plaintiff has not alleged facts sufficient to support a finding of a widespread and persistent custom of tolerance or acquiescence of federal rights violations throughout the EPPD. Plaintiff does not allege any specific actions taken by Allen prior to Peralta's use of force.

As noted above, Plaintiff's allegations do include twenty-nine prior complaints regarding Peralta prior to October 31, 2013, spanning from 1999-2009, four of which appear to address use of force, none of which occurred within the four years preceding Peralta's use of force against Plaintiff, and only one of which, for dereliction of duty, occurred after Allen became Chief. However, Plaintiff does not allege the existence of any complaints about other officers for use of force violations or constitutional violations of any kind.

Further, Plaintiff's allegations that numerous officers were concerned about Peralta's conduct, some offering sworn statements for the IAD investigation, undermines Plaintiff's argument that there was a custom or pattern of tolerance for or acquiescence to federal rights violations so widespread and well-settled that it was the expected, accepted practice of officers of the EPPD.

Plaintiff has failed to allege facts sufficient to support a finding that a custom of tolerance or acquiescence of federal rights violations existed or was accepted by Allen with deliberate indifference and which caused Peralta's use of force to hold Allen liable for Peralta's use of force.  Consequently, Plaintiff has failed to state a claim against either Allen or the City for excessive use of force based on the existence of a custom of such tolerance.  Plaintiff's claims regarding a custom of tolerance should be dismissed with prejudice as to all defendants.

**B.      Count Two: Conspiracy**

Plaintiff's Count Two asserts a claim against all defendants for maliciously conspiring to violate Plaintiff's constitutional rights to due process and equal protection under the Fifth and Fourteenth Amendments under both Sections 1983 and 1985.  (Doc. 2:20)  Plaintiff's response refers to a conspiracy to cover-up Peralta's use of force by ratifying Peralta's behavior.  (Doc. 2:20; 17:2, 9)  Lee's reply counters other possible interpretations of Plaintiff's Count Two Conspiracy claim, including construction as a denial of access to the courts, malicious prosecution, negligence, and falsifying reports.  (Doc. 21:5-6)  For the reasons stated below, the Court recommends that Plaintiff's Count Two Conspiracy claim be dismissed with prejudice as to all defendants on all of the theories advanced.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act[.]"  *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).  Plaintiff must allege (1) an actual violation of a Section 1983 protected right; (2) an agreement among defendants to commit such violation, and (3) actions taken in concert by the defendants with the specific intent to violate that right.  *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999), abrogated in part on other grounds

by *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (*en banc*); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

Dispositive of this claim, under the intracorporate conspiracy doctrine, "the Fifth Circuit considers a police department and its officers to be a single legal entity that is incapable of conspiring with itself."   *Rivera v. City of San Antonio*, 2006 WL 3340908 at *14 (citing *Thompson v. City of Galveston*, 979 F.Supp. 504, 511 (S.D. Tex. 1997)); *Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994).   Consequently, in addition to the deficiencies detailed below, Plaintiff fails to state a claim upon which relief could be granted for conspiracy amongst the defendants for this reason as well.

### 1.    Conspiracy to Use Excessive Force

Defendants argue that, to the extent Plaintiff claims Defendants conspired to violate Plaintiff's right to be free from Peralta's use of excessive force, Plaintiff failed to allege any agreement between Defendants Peralta, Lee, Callan, or Allen, or actions taken in furtherance thereof by defendants other than Peralta before Peralta's use of force that could have caused the violation.   (Docs. 12:7-8; 13:7-8)   Nor could the actions alleged to have been taken after Peralta's use of force have logically been performed with intent to cause Peralta's alleged excessive use of force, which had already occurred.   *Id.*   The Court agrees.

### 2.    Conspiracy to Deny Due Process

Plaintiff asserts that his right to due process was violated by Defendants' conspiracy to cover up the alleged excessive use of force.   (Doc. 2:20)   His factual allegations relevant to most of the defendants focus on actions taken during the IAD investigation reviewing Peralta's use of force.   *Id.*   Defendants argue that Plaintiff had no rights with respect to the IAD investigation to

be violated.  (Doc. 12:9; 13:9)  In response, Plaintiff has pointed to no authority to support the proposition that he had any due process rights regarding the IAD investigation.

### 3.        Conspiracy to Equal Protection

Plaintiff also argues that his right to equal protection of the laws was violated by Defendants by joining the civil conspiracy to cover up the violation.  (Doc. 2:20)

The Fourteenth Amendment's right to equal protection of the laws requires that persons similarly situated be treated similarly.  *Dudley v. Angel*, 209 F.3d 460, 463 (5th Cir. 2000). To state a claim for a violation of equal protection under Section 1983, a plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).  Further, under Section 1985(3), to state a civil conspiracy claim, a plaintiff must allege facts sufficient to support finding:

> "(1) a conspiracy (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of  a citizen of the United States[; and (4)] the conspiracy must also have a racially based animus."

*Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (internal citation omitted).[3]

Although Plaintiff alleged civil conspiracy and violation of his right to equal protection, he did not allege any facts to suggest that he was part of a protected class or that the defendants' alleged conduct was motivated by racial animus.  Nor did he allege facts to show how he was being treated differently from anyone similarly situated to himself.

### 4.        Conspiracy to Falsify Reports

To the extent, if any, Plaintiff claims that the intent of the alleged conspiracy was to falsify reports, the Fifth Circuit has stated that "there is no right to a completely accurate police

---

[3] Plaintiff does not state any claims or allege facts to support a claim of a civil conspiracy under the other provisions of Section 1985, i.e., for preventing an officer from performing duties or for obstructing justice, intimidating a party, witness, or juror.  *See* 42 U.S.C. § 1985 (1), (2).

report." *Smith v. Patri*, 99 Fed. Appx. 497, 498 (5th Cir. 2004).  The mere existence and filing of falsified police reports does not violate any constitutional right.  *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1980).

### 5.      Conspiracy to Deny Access to the Courts

To the extent, if any, Plaintiff claims that the alleged conspiracy was intended to prevent him from pursuing relief for the alleged excessive use of force against him in court, Plaintiff cannot prove such denial of access to the courts; he has in fact filed an excessive force claim in this Court.

### 6.      Conspiracy to Maliciously Prosecute

To the extent, if any, Plaintiff claims that the alleged conspiracy violated his rights by subjecting him to malicious prosecution based on falsified reports, there is no constitutional action to pursue a malicious prosecution.  The Fifth Circuit has established that a free-standing malicious prosecution claim is not viable, rejecting a constitutional tort of malicious prosecution. *See Cuadra v. Houston Indep. School Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (addressing in part alleged false police reports).

Additionally, if Plaintiff's true intent is to challenge his conviction for assault on a public officer arising from the same episode of events, or to otherwise assert that the alleged false reports prevented him from asserting a defense in that or any other criminal proceeding that is pending or has concluded unfavorably for Plaintiff, such claim would be barred by *Heck*, 512 U.S. 477, as discussed in section IIA1b above.  Success on such claim would necessarily imply that the state court decision was wrongly decided.  Plaintiff does not contend that his conviction or any charges he wishes to challenge have terminated in his favor.

For all the reasons stated above, Plaintiff has failed to state a claim for which relief could be granted under Section 1983 or 1985 based on a conspiracy between Defendants to subject him to excessive use of force, violation of due process or equal protection, falsified reports, denial of access to the courts, malicious prosecution, or any other violation of a constitutional right.

### C.        Count Three: Refuse/Neglect to Prevent or Intervene

In his Count Three, Plaintiff alleges that Allen, Callan, and the City knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline defendant police officers on a continuing basis in their duties to refrain from unlawfully and maliciously harassing, arresting, imprisoning and prosecuting a citizen, conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff; and otherwise depriving Plaintiff of such rights.  (Doc. 2:21)  He contends that Allen, Callan, and the City had actual or constructive knowledge, or had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis should have had knowledge that such wrongs were committed. *Id*.  He asserts that Allen, Callan, and Lee owed a duty to act according to the standard of ordinary care of a police officer to conduct a proper investigation; that they breached that duty by failing to perform their duties and failing to adequately control and supervise or investigate Peralta; which failure proximately caused Plaintiff's injury, and presumably Peralta's excessive use of force.  (Doc. 2:21-22)  Plaintiff further maintains that Allen, Callan, and the City had the power to prevent or aid in preventing the cover-up of Peralta's excessive use of force, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.  (Doc. 2:22)  Rather than prevent it, Plaintiff avers, Defendants approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers heretofore described.  *Id*.  And as a direct and proximate cause of the negligent and

intentional acts of Allen, Callan, and the City, Plaintiff suffered physical injury and severe mental anguish in connection with the deprivation of his constitutional and statutory rights. *Id.*

This claim appears to reframe many of Plaintiff's earlier claims as negligence claims. Negligence claims are not cognizable under Section 1983, which requires deliberate indifference to hold supervisors liable. *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (negligence and gross negligence are not sufficient, deliberate indifference, reflecting an intentional choice is the level of culpability required to hold Section 1983 defendant liable) .

To the extent Plaintiff seeks to hold Defendants accountable for Peralta's use of force under a theory of bystander liability, such claim also fails.  The Fifth Circuit requires the following elements to impose bystander liability: (1) the officer is physically present at the scene of the constitutional violation; (2) the officer has a reasonable opportunity to realize and knows that another officer is violating someone's constitutional rights; (3) the officer has a reasonable opportunity to take reasonable measures to prevent or stop the constitutional injury; and (4) the officer chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Hale*, 45 F.3d at 919.  In this instance, other than Peralta, no defendant was present during Peralta's use of force.

Plaintiff does not defend his Count Three claim in his response or provide any authority to support it.  (Doc. 17)  The Court finds that Plaintiff's Count Three has failed to state a claim upon which relief could be granted as to any of the defendants and recommends that such claims be dismissed with prejudice.

## III.    Texas Tort Claim Act

Plaintiff asserts claims under the TTCA against Defendants for conspiracy, negligence, and intentional or negligent infliction of emotional distress and additionally against Peralta for assault and battery.  (Doc. 2:22-26)   Defendants all contend that the state law claims Plaintiff

asserts against them under the TCCA should be dismissed.  (Docs. 12:9-13, 13:10-12, 14:12-14)

Both the City and the employees have moved for dismissal of such claims against the individual

defendants based on Texas Civil Practice & Remedies Code Sections 101.057(2), 101.106(e), or

101.106(f).  *Id.*  The City further contends that Plaintiff's TTCA claims against the City should

be dismissed because he has failed to affirmatively demonstrate a valid waiver of immunity

under the TTCA.  (Doc. 12:12)  Plaintiff did not address these arguments in his response.  (Docs.

17, 18:5)

> Texas Civil Practice and Remedies Code Section 101.106(e) of the TTCA states:
>
> If a suit is filed under this chapter against both a governmental unit and any of its
> employees, the employees shall immediately be dismissed on the filing of a
> motion by the governmental unit.
>
> Texas Civil Practice and Remedies Code Section 101.106(f) of the TTCA provides:
>
> If a suit is filed against an employee of a governmental unit based on conduct
> within the general scope of that employee's employment and if it could have been
> brought under this chapter against the governmental unit, the suit is considered to
> be against the employee in the employee's official capacity only.   On the
> employee's motion, the suit against the employee shall be dismissed unless the
> plaintiff files amended pleadings dismissing the employee and naming the
> governmental unit as defendant on or before the 30th day after the date the motion
> is filed.

Plaintiff's allegations concern actions taken by Peralta in the course of arresting Plaintiff

and by the other individual defendants in the course of conducting or reviewing an IAD

investigation on Peralta's use of force or supervising Peralta and the other defendants, which is

within the general scope of their employment.  Further, the suit could have been, and has been,

brought under the TTCA against the City, even if the TTCA does not waive immunity for such

claims.  *See Franka v. Velasquez*, 332 S.W.3d 367, 379-380, 385 (Tex. 2011).  Thus, Plaintiff's

state law tort claims against all the individual defendants are considered under state law to be

brought against them only in their official capacity.  *See* Tex. Civ. Prac. & Rem. Code Ann. §

101.106(f); *Franka*, 332 S.W.3d at 381.  Accordingly, the officers are entitled to dismissal of the state law claims brought against them.  *See Stinson v. Fontenot*, 435 S.W.3d 793, 793–794 (Tex. 2014); *Callaway v. City of Austin*, No. A-15-CV-00103-SS, 2015 WL 4323174, at *11 (W.D. Tex. July 14, 2015) (dismissing claims of excessive use of force against plaintiff during involuntary blood draw after arrest for DWI).

The City, already a defendant in this case, asserts governmental immunity regarding Plaintiff's state law tort claims.  (Doc. 12:12-13)  Absent a waiver of immunity by the legislature, a governmental unit in Texas, such as the City, is immune from tort liability.  *See Harris Cnty. v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994); *City of El Paso v. Gomez-Parra*, 198 S.W.3d 364, 367-369 (Tex. App.—El Paso 2006).  The TTCA does not waive governmental immunity for intentional torts, such as assault, battery, intentional infliction of emotional distress, or conspiracy, and provides only a limited waiver for certain types of negligence claims, those involving use of government vehicles, premises defects, and injuries arising out of conditions or use of tangible personal or real property.  Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.057; *see also Gomez-Parra*, 198 S.W.3d at 367-369; *Franka*, 332 S.W.3d at 375–77, 381 (collecting cases); *City of Houston v. McCullough*, No. 01-02-00081-CV, 2003 WL 141251 (Tex. App.—Houston [1st Dist.] Jan. 9, 2003) (finding immunity not waived for officer's intentional sexual assault).  The TTCA specifically does not waive immunity for the failure to provide, or the method of providing, police protection.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.055(3) (excepting from liability failure or method of providing police protection); 101.0215(a) (making municipality generally liable for damages arising from its governmental functions including police and fire protection and control).

None of Plaintiff's claims fall into any of the categories for which governmental immunity was waived and not excepted under the TTCA. Therefore, Plaintiff's common law tort claims lodged against the City, including assault, battery, negligence, negligent or intentional infliction of emotional distress, or conspiracy to commit such torts should likewise be dismissed with prejudice. *See SNB v. Pearland Indep. Sch. Dist.,* 120 F.Supp.3d 620, 631-632 (S.D. Tex. Gal. 2014).

For all the reasons stated above, the Court recommends that all of Plaintiff's state law tort claims be dismissed with prejudice against all defendants.

## CONCLUSION

For all the reasons set forth above, it is the **RECOMMENDATION** of this Court that Defendants' Motions to Dismiss (Docs. 12, 13, 14) be **GRANTED** and Plaintiff's claims be **DISMISSED with prejudice**, except that Plaintiff's Count One claim against Peralta in his individual capacity for excessive use of force (Doc. 2:19) be **DISMISSED without prejudice** to Plaintiff filing an amended complaint raising such claim under the appropriate constitutional amendment.

**SIGNED** this 22nd day of June, 2016.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE